ROBERT B. ARMOR, Plaintiff, v. WILLIAM F. MINK, Defendant.

(*October* 7, 1953.)

LAYTON, J., sitting.

*Albert L. Simon* and *Stephen E. Hamilton, Jr.,* for Plaintiff.

*William Poole* and *Henry R. Horsey* (of Berl, Potter and Anderson), *A. James Gallo* of Counsel, for Defendant.

Superior Court for New Castle County, No. 116, Civil Action, 1953.

LAYTON, J.:

There are several grounds assigned for a new trial. I shall deal with only one of them at any length.

In the late afternoon of November 28, 1952, after dark, plaintiff testified he walked up to the intersection of Twelfth and Washington Streets, in this city, with the intention of crossing from the east to the west side of Washington Street. He waited until the light turned green in his favor, looked and saw nothing approaching for a quarter of a block, and stepped into the street to cross. Then, in his own words—"I had gone four or five paces when I heard a woman's voice utter an exclamation; and at the same instant, out of the corner of my eye, I saw the bumper of a car within a few feet of my legs, and almost instantly I was struck and knocked forward." Plaintiff admitted that after first ascertaining that no traffic was within a quarter of a block of the intersection, he did not again look nor did he see the car which struck him until it was within a few feet.

Defendant claims error in my refusal to charge as follows:

"A person crossing a street or highway is required to make reasonable use of all his senses in order to observe an impending danger, and if he fails to do so, and is injured by reason of such failure, he is guilty of such negligence as will prevent any recovery for the injury sustained. A green light at a traffic intersection offers but a qualified permission to proceed and the

pedestrian crossing in reliance upon it must continually be on guard for his safety."

Likewise, error is asserted in the following quoted portion of the charge which I did give in that connection:

"It goes almost without saying, I think, that a pedestrian crossing a street in a recognized crosswalk, and with a green light in his favor, has the right of way over vehicular traffic at that point, and the fact that the crosswalk is not marked by white lines in no way lessens the pedestrian's right of way.* * *

"Now, I have said and will say again that if the plaintiff here was crossing with a green light in his favor in the crosswalk as defined to you he had the right of way over vehicular traffic. However, a person crossing a street in a pedestrian crosswalk, even with a green light in his favor is not completely relieved of the necessity of keeping a lookout for his safety, although the degree of vigilence required in such a case would obviously be less than if the crossing were not governed by a red and green traffic signal, and the reason for that, I think, is again obvious, because the pedestrian with a green light in his favor would have the right to think that motor vehicles coming would stop at the red light, which would be against them, and therefore the law does not put so great a burden of keeping a lookout when the pedestrian is crossing with the green light in his favor."

Defendant cites four Delaware cases[1] in support of the proposed charge which I refused. None of these cases is now authoritative insofar as concerns pedestrians crossing at street intersections, a situation now governed by Section 303 of the Ordinances of Wilmington effective March 1, 1941, which reads:

"At intersections where traffic is controlled by traffic control signals or by police officers, pedestrians shall not cross a road-

---

[1]*Hannigan v. Wright*, 5 Penn. 537, 63 *A*. 234; *Cecchi v. Lindsay*, 1 Boyce 185, 75 *A*. 376; *Brown v. Mayor & Council of the City of Wilmington*, 4 Boyce 492, 90 *A*. 44; *Simeone v. Lindsay*, 6 Penn. 224, 65 *A*. 778.

way against a Red or Stop signal and between adjacent intersections so controlled shall not cross at any place except upon a marked or unmarked crosswalk. A pedestrian crossing or starting across in any such crosswalk on a Green or Go signal shall have the right of way over all vehicles and coaches, including those making turns, until such pedestrian has reached the opposite curb or a safety zone, and it shall be unlawful for the driver of any vehicle or coach to fail to yield the right of way to any such pedestrian."

The cases cited by the defendant obviously state the common law principle governing the rights of pedestrians and automobiles at intersections as they existed many years ago, but since the intervention of Section 303 of the Ordinances just quoted, it is very clear that quite a different interpretation of the law must now be given.

Defendant cites *Flores v. Los Angeles Ry. Corp.*, 15 *Cal. App.* 2d 576, 59 *P.* 2d 856. The case is completely inapposite for, there, although the light may have been green in favor of the pedestrian plaintiff, yet, a policeman had motioned defendant's street car to proceed, and held up his hand to halt plaintiff, who, nevertheless, ignored or failed to see the police signal and walked into the front of defendant's car. *Ashley v. Kilborn*, 333 *Mich.* 283, 52 *N. W.* 2d 528, is also relied on. It would seem to support defendant's contention, but I accept the following quotation from *Newman v. Protective Motor Service Co.*, 298 *Pa.* 509, 148 *A.* 711, 712, as a more accurate statement of the law governing this exact situation:

"It is the contention of the appellee that, although the traffic light was set in appellants' favor they should have continued as they crossed Pine street to look for traffic at their right. It is often impossible for this to be done at crowded intersections. They were not bound to anticipate that the defendant's driver would disregard the traffic signal. *Alperdt v. Paige*, 292 *Pa.* 1, 4, 140 *A.* 555; *Robb v. Quaker City Cab Co.*, 283 *Pa.* 454, 458, 129 *A.* 331; *Lewis v. Wood*, 247 *Pa.* 545, 93 *A.* 605. Indeed they had

the right to assume that the driver of defendant's truck would be regardful of his duties to others on the highway. *Robinson v. American Ice Co.*, 292 *Pa.* 366, 370, 141 *A.* 244; *Davis v. American Ice Co.*, 285 *Pa.* 177, 185, 131 *A.* 720. We have laid down the rule in a number of cases that at crossings the drivers of all motor vehicles must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians having the right to cross the streets at crossings and to rely on the drivers of automobiles not to run them down, and we have categorically said that 'care at street crossings is the highest duty of motorists.' *Johnson v. French*, 291 *Pa.* 437, 439, 140 *A.* 133; *Gilles v. Leas*, 282 *Pa.* 318, 127 *A.* 774, and cases therein cited. The case in hand is stronger for the plaintiff than it was in either the *Gilles* or *Johnson* Cases. Here the traffic light was in favor of the pedestrians while they were crossing Pine street, and against the truck driver during all the time that he proceeded in their direction, from the moment he reached the house line on the east side of Broad street, more than 100 feet away from them. The language used in *Gilles v. Leas*, 282 *Pa.* 318, at page 322, 127 *A.* 774, 775, is most appropriate here: 'He (the pedestrian) had an undoubted right to leave his place on the sidewalk when nothing appeared before him and the traffic signal was not turned against him. His position became perilous only through the unlawful act of defendant.' In that case the signal was changed while the plaintiff was crossing the street; in this, it remained in the plaintiffs' favor while they were making the crossing. In *Zandras v. Moffett*, 286 *Pa.* 477, [at] p[age] 481, 133 *A.* 817, 818, 47 *A. L. R.* 699, we said: 'All drivers in congested areas with controls installed must be on the lookout for warnings which they have every reason to see displayed, when necessary, and to have their vehicle, whether light or heavy, under such management as will enable them to promptly obey signals given, which they are bound to discover, and must have seen, if due observation was made.' "

See also *Cyclopedia of Automobile Law and Practice, Blashfield*, 2 *A.*, Section 1434, page 323, etc.; *Wilson v. Freeman*, 271

*Mass.* 438, 171 *N. E.* 469; *Lubliner v. Ruge,* 21 *Wash.* 2d 881, 153 *P.* 2d 694.

■ I am of the opinion that there was no error in that part of the charge objected to.

The second ground assigned as error, to the effect that the damages were excessive, is denied.

■ Finally, error is attributed to my ruling on the following question and answer:

"Q. Did you notice anything about the way this man [plaintiff] walked as he entered that crosswalk? A. When I first saw the man, I [defendant] thought he was under the influence of liquor."

I sustained the objection to this question and ordered the answer stricken, first, because at that point (1) it was not responsive to the question and (2) I thought it proper for the witness first to describe his observations as to the plaintiff's manner of walking, etc., before allowing him to state his conclusion as to his condition. Actually, defendant's counsel did not choose to lay the groundwork in order again to ask the question. I see no error in the ruling.

Defendant's motion for a new trial is denied.