**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| RHONDA ELSEY-JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N16C-09-078 EMD |
| | ) | |
| JACKIE GULLION as personal | ) | TRIAL BY JURY OF TWELVE |
| representative of the ESTATE OF | ) | DEMANDED |
| CONNIE GULLION, and STEPHANIE | ) | |
| DELOACH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| JACKIE GULLION as personal | ) | |
| representative of the ESTATE OF | ) | |
| CONNIE GULLION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| STEPHANIE DELOACH, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 9, 2018
Decided: June 5, 2018

*Upon Defendant Jackie Gullion's Motion for Summary Judgment*
***GRANTED** in part and **DENIED** in part*
*Upon Stephanie DeLoach's Motion for Summary Judgment as to Claims of Rhonda Elsey-Jones*
***GRANTED***

## I. INTRODUCTION

This case arises from two separate but related accidents on Interstate 95 ("I-95"). Connie

Gullion purportedly moved into Plaintiff Rhonda Elsey-Jones' lane of traffic causing Ms. Elsey-

Jones to swerve off the roadway. Connie Gullion stopped her vehicle in the median and

attempted to cross the highway to reach Ms. Elsey-Jones' car. At that point, Defendant Stephanie DeLoach struck and killed Ms. Gullion as she attempted to walk across the highway.

Ms. Elsey-Jones filed suit against Defendant Jackie Gullion, as personal representative of the estate of Ms. Gullion (the "Estate"), and Ms. DeLoach. The Estate filed a cross claim against Ms. DeLoach. On the same day, the Estate and Ms. DeLoach filed motions for summary judgment against Ms. Elsey-Jones—Defendant Jackie Gullion's Motion for Summary Judgment (the "Gullion Motion") and Stephanie DeLoach's Motion for Summary Judgment as to Claims of Rhonda Elsey-Jones (the "DeLoach Motion" and, collectively with the Gullion Motion, the "Motions"). Ms. Elsey-Jones opposes the Motions.

For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part the Gullion Motion and **GRANTS** the DeLoach Motion.

## II. RELEVANT FACTS

This case arises from two accidents on I-95 on October 5, 2014. Ms. Elsey-Jones was driving on I-95 when Ms. Gullion purportedly moved into Ms. Elsey-Jones' lane of traffic.[1] Ms. Elsey-Jones swerved to avoid an accident with Ms. Gullion's vehicle.[2] Ms. Elsey-Jones spun clockwise and struck a cement culvert on the side of the road.[3] Ms. Gullion parked her car in the center median of the roadway.[4] Two men quickly approached Ms. Elsey-Jones' car.[5] The men helped Ms. Elsey-Jones over a metal barrier.[6]

Ms. Gullion then attempted to cross the street from the median to Ms. Elsey-Jones' vehicle.[7] One of the men with Ms. Elsey-Jones said something about someone crossing the

---

[1] Gullion Mot. ¶ 2.
[2] Gullion Mot. ¶ 2.
[3] Compl. ¶ 6.
[4] Gullion Mot. ¶ 3.
[5] Deposition of Rhonda Elsey-Jones on April 11, 2017 (the "Elsey-Jones Depo") at 62-63.
[6] Elsey-Jones Depo at 62-63.
[7] Gullion Mot. ¶ 3.

2

road.[8]  Ms. DeLoach was also driving on I-95 at this time.  Ms. DeLoach struck Ms. Gullion as Ms. Gullion attempted to cross the highway.[9]  Ms. Elsey-Jones "heard a thud," turned to the left, and saw Ms. Gullion's body on the ground.[10]

Corporal Joseph Aube of the Delaware State Police responded to the scene of the accident.  Corporal Aube created an accident report regarding the near miss between Ms. Elsey-Jones and Ms. Gullion (the "Police Report").[11]  Corporal Aube then created a report regarding the fatal collision between Ms. DeLoach and Ms. Gullion (the "Collision Report").[12]  The Collision Report states that Ms. DeLoach noted she was traveling nearly 60 mph in a 55 mph zone.[13]  The Collison Report further notes that pedestrians are prohibited on the highway due to the high speed on I-95.[14]

Ms. Elsey-Jones went for an initial consultation with a chiropractor, Dr. Scott Evan Rosenthal, on October 13, 2014.[15]  Ms. Elsey-Jones complained of leg pain, lower back pain, and headache.  Dr. Rosenthal created a treatment plan for Ms. Elsey-Jones.

On April 21, 2015, counselors for Ms. Elsey-Jones at Turnaround, Inc. created a report which found that Ms. Elsey-Jones' conditions improved since the incident.  However, the counselors also found that Ms. Elsey-Jones still experienced some problems from "a number of stressful events in the last year, including witnessing a driver get killed on the highway and distressed family relations. . . ."[16]

---

[8] Elsey-Jones Depo at 63.
[9] Gullion Mot. ¶ 3.
[10] Elsey-Jones Depo at 63, 66-67.
[11] Gullion Mot., Ex. C.
[12] Gullion Mot., Ex. D.
[13] *Id.*
[14] *Id.*
[15] Gullion Mot., Ex. F.
[16] Gullion Mot., Ex. G.

On September 12, 2016, Ms. Elsey-Jones filed suit for: (1) negligence against the Estate; and (2) negligence against Ms. DeLoach.[17] The Estate filed cross claims against Ms. DeLoach on November 11, 2017.[18] On March 9, 2018, the Estate filed the Gullion Motion and Ms. DeLoach filed the DeLoach Motion. On March 26, 2018, Ms. Elsey-Jones filed the Response to Defendant Stephanie DeLoach's Motion for Summary Judgment (the "DeLoach Response") and the Response to Defendant Jackie Gullion's Motion for Summary Judgment (the "Gullion Response").

On May 21, 2018, the Court held a hearing (the "Hearing") on the Gullion Motion, DeLoach Motion, DeLoach Response, and the Gullion Response.

### III. PARTIES' CONTENTIONS

**A.    THE GULLION'S MOTION**

The Estate argues that the case should be dismissed because Ms. Elsey-Jones was not in the zone of danger and Ms. Elsey-Jones failed to provide evidence of physical injury. Regarding the physical injury, the Estate contends that Ms. Elsey-Jones' licensed clinical social workers lack the specialized training to testify regarding psychology or psychiatry. Further, there is no indication of any physical manifestation of an injury resulting from emotional distress.

**B.    THE DELOACH'S MOTION**

Ms. DeLoach claims that the case should be dismissed because: (1) Ms. Elsey-Jones did not witness the impact between Ms. Gullion and Ms. DeLoach; (2) Ms. DeLoach was not acting improper or unreasonable on the roadway; and (3) Ms. Elsey-Jones failed to present medical opinion to support physical injury relating the traumatic experience.

---

[17] Compl.
[18] D.I. 5.

4

**C.** **THE DELOACH RESPONSE AND GULLION RESPONSE**

In the Gullion Response, Ms. Elsey-Jones argues that she was in the zone of danger and produced admissible evidence of physical injury resulting from the negligent infliction of emotional distress ("NIED"). Ms. Elsey-Jones stated that she has an emotional scar that is not able to heal. Further, two social workers reported that Ms. Elsey-Jones' physical injuries are in part physical manifestations of the grief from witnessing Ms. Gullion's death.

In the DeLoach Response, Ms. Elsey-Jones argues that although she did not see the car impact Ms. Gullion, she witnessed the accident when viewed as a whole. Next, speeding—even five miles over the speed limit—is negligence that is a proximate cause to the death of Ms. Gullion. Third, Ms. Elsey-Jones restates her arguments made in the Gullion Response about the expert testimony.

**D.** **THE HEARING**

At the Hearing, the Estate and Ms. DeLoach argued that there are two main issues: (1) Ms. Elsey-Jones was not in the zone of danger; and (2) Ms. Elsey-Jones failed to identify a qualified expert to prove proximate cause between the trauma and physical manifestations of the emotional pain.

Ms. Elsey-Jones argues that she was in the zone of danger. This was a continuing negligence. Ms. Elsey-Jones had just been run off the road and exited her vehicle before hearing a vehicle strike Ms. Gullion as she attempted to cross the highway. Based on all of the surrounding circumstances, Ms. Elsey-Jones was in the zone of danger and reasonable feared for her safety.

Ms. Elsey-Jones argues that they have the two social workers or alternatively, that they do not need an expert in this case. Ms. Elsey-Jones argues that the two social workers work in a

5

trauma center and are qualified to render their opinion regarding Ms. Elsey-Jones' physical manifestations of emotional distress. Alternatively, Ms. Elsey-Jones argues that they do not need an expert witness in this case to show proximate cause. Ms. Elsey-Jones sued for negligence and emotional distress in this case is a part of damages and not an independent claim—such as negligent infliction of emotional distress. Counsel for Ms. DeLoach and the Estate were scheduled to depose the social workers on May 9, 2018.

Upon questioning from the Court, Ms. Elsey-Jones also clarified that the claims for emotional distress relate only to a negligence claim and not a NIED claim. Ms. Elsey-Jones contends that Ms. Elsey-Jones' emotional injuries are part of her pain and suffering damages asserted in her two negligence claims. Accordingly, Ms. Elsey-Jones claims that no expert is required to testify about the mental anguish as it will be part of her testimony.

## IV. STANDARD OF REVIEW

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[19] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[20] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[21] The moving party bears

---

[19] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).
[20] *Id.*
[21] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

6

the initial burden of demonstrating that the undisputed facts support his claims or defenses.[22] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[23]

## V. DISCUSSION

### A. NEGLIGENCE

To prove negligence, a plaintiff must show: (1) duty; (2) breach; (3) causation; and (4) harm.[24] Motorists have a duty to maintain a proper lookout while traveling on a roadway.[25] In fact, Delaware courts "have laid down the rule in a number of cases that at crossings the drivers of all motor vehicles must be highly vigilant and maintain such control that, on the shortest possible notice, they can stop their cars so as to prevent danger to pedestrians having the right to cross the streets at crossings and to rely on the drivers of automobiles not to run them down, and we have categorically said that 'care at street crossings is the highest duty of motorists.'"[26]

Motorists and pedestrians generally owe a duty to one another while crossing a roadway. However, there are some exceptions. A pedestrian is not negligent in assuming that he or she is safe from danger when on a sidewalk.[27] Additionally, a motorist is not negligent in failing to anticipate that pedestrian will jump out between parked cars.[28]

All the duties between a motorist and pedestrians appear to be connected to one another. There is no indication that a motorist owes a duty to not strike another pedestrian within

---

[22] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

[23] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

[24] *Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010).

[25] *See Fernandez v. Davis*, 1991 WL 113607, at *2 (Del. Super. June 4, 1991), *aff'd*, 608 A.2d 726 (Del. 1991).

[26] *Armor v. Mink*, 100 A.2d 226, 228–29 (Del. Super. 1953).

[27] *Biddle v. Haldas Bros.*, 190 A. 588, 595 (Del. Super. 1937) ("This also is to be said: a pedestrian has a right upon the sidewalk, or that space set aside for pedestrians, which is superior to the right of motor vehicles; and a pedestrian is not negligent in assuming that he is safe from the danger of automobiles passing on the adjacent roadway, nor is a pedestrian negligent in failing to anticipate that the driver of an automobile will so operate his car as to endanger his safety.")

[28] *See Hudson v. Old Guard Ins. Co.*, 3 A.3d 246, 250 (Del. 2010).

7

someone's view. A potential exception to this situation is if the plaintiff was within the zone of danger seeking negligent infliction of emotional distress or intentional infliction of emotional distress.

Under a straight claim of negligence, Ms. Gullion owed a duty of care to Ms. Elsey-Jones as a fellow motorist. The Court holds that, absent more, Ms. DeLoach did not owe any duty to Ms. Elsey-Jones to not strike a pedestrian in Ms. Elsey-Jones' presence. The Court does not see a logical extension of the generally accepted principles to provide Ms. DeLoach owed a duty to someone observing the accident between Ms. DeLoach and Ms. Gullion. Unless the "zone of danger" situation exists (discussed below), the Court cannot discern where would the duty end— *e.g.*, people at ground level at any observable distance, people in surrounding buildings that witness the accident, etc. The Court will not adopt this potentially "slippery slope" extension of negligence claims by an observer of an accident.

## B. ZONE OF DANGER

Ms. Elsey-Jones clarified that she is not asserting a NIED claim against the Estate or Ms. DeLoach. As such, the Court grants the relief sought in the Gullion Motion and the DeLoach Motion with respect to any NIED claims that may have been raised. The Court still needs to address "zone of danger" as it relates to Ms. Elsey-Jones' negligence claim against Mr. DeLoach.[29]

---

[29] At the Hearing, Ms. Elsey-Jones clarified that she is not making a NIED claim against Ms. DeLoach or the Estate. Despite this clairification, Ms. Elsey-Jones does make a "zone of danger" allegation in paragraph 9 of her Complaint. *See* Compl. ¶ 9.

The legal issue of "zone of danger" is best addressed in NIED cases.[30] "The zone of danger is that area where the negligent conduct causes the victim to fear for his own safety."[31] "Thus, in order to be in the zone of danger a plaintiff must show that the negligent conduct caused the plaintiff to fear for her own safety."[32] Additionally, the plaintiff must suffer some outrage "within the immediate zone of danger of the negligent act."[33] In Delaware, the plaintiff must be within the path of the oncoming car. Delaware relies upon The Restatement (Second) of Torts § 313 for the zone of danger. In fact,

> It illustrates a mother who witnesses her child negligently struck by a vehicle and suffers emotional distress resulting in bodily injury as a result. Under the zone of danger rule, the mother's emotional distress is compensable only if she were in path of the oncoming car.[34]

In this case, Ms. Elsey-Jones had the near collision with Ms. Gullion and swerved off the road. Ms. Elsey-Jones stated that she suffered "an emotional scar that [she] has not been able to

---

[30] To prove NIED, a plaintiff must show: "(1) negligence causing fright to someone; (2) in the zone of danger; (3) producing physical consequences to that person as a result of the contemporaneous shock." *See Rhinehardt v. Bright*, 2006 WL 2220972, at *5 (Del. Super. July 20, 2006) (citing *Snavely ex rel. Snavely v. Wilmington Med. Ctr., Inc.*, CIV.A. 82C-SE-53, 1985 WL 552277, at *1 (Del. Super. Mar. 18, 1985)).

[31] *Snavely*, 1985 WL 552277, at *4.

[32] *Id.*

[33] *Allison v. J.C. Bennington Co.*, 1996 WL 944908, at *2 (Del. Super. Aug. 6, 1996) (citing *Robb v. Pennsylvania Railroad Co.*, 210 A.2d 709 (Del. 1965)).

[34] *Fanean v. Rite Aid Corp. of Delaware, Inc.*, 984 A.2d 812 (Del. Super. 2009) (citing Restatement (Second) of Torts § 313, cmt. d); *see also DeAguiar v. County of Suffolk*, 734 N.Y.S.2d 212, 213 (N.Y. App. Div. 2d Dept. 2001) (finding that a sister was not in the zone of danger "merely by following the decedent on the same road and around the same curve" after seeing a cloud of dust and her brother bleeding on the ground). *But see Armstrong v. A.I. Dupont Hosp. for Children*, 60 A.3d 414, 423 (Del. Super. 2012) (finding that NIED "is a viable cause of action where the negligence is continuing and occurs in the third person's presence" in a medical malpractice case. The Court distinguished its decision from *Snavely* because the medical negligence was a continuing negligence and not a "moment-in-time act of negligence"). To make a claim for NIED where the plaintiff feared for a third person outside the zone of danger, the court will factor:

> (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship of the presence of only a distant relationship.

*Armstrong*, 60 A.3d 414 at 425 (citing *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968)).

heal."[35] Further, Ms. Elsey-Jones states that she suffered the emotional scar from "[t]he death of someone and the near death of myself. . . . [b]ecause I almost ran into a concrete wall trying to stop my vehicle."[36]

After the near collision, two men came to help Ms. Elsey-Jones out of her vehicle. At that point, the two men helped Ms. Elsey-Jones over a metal barrier "up a little ways" from Ms. Elsey-Jones' car.[37] Then, one of the men said something about a person crossing the road. Ms. Elsey-Jones heard a thud and when she looked over, Ms. Gullion was laying on the ground. Ms. DeLoach struck Ms. Gullion nearly sixty feet from Ms. Elsey-Jones' car while Ms. Elsey-Jones was behind a metal barrier.[38] Ms. Gullion's body landed nearly fifty feet from Ms. Elsey-Jones' car.[39] Ms. Elsey-Jones is not related to Ms. Gullion and nothing in the record indicates any other close relationship between the two.

On the factual record, Ms. Elsey-Jones was not in the zone of danger in such a manner that Ms. DeLoach owed Ms. Elsey-Jones a duty of care. Ms. Elsey-Jones was at least sixty feet from the accident and fifty feet from where Ms. Gullion landed. Ms. Elsey-Jones did not witness the actually accident between Ms. DeLoach and Ms. Gullion but learned of it from another observer. Moreover, Ms. Elsey-Jones has an absence of any relationship to Ms. Gullion. The Court, therefore, finds that Ms. Elsey-Jones cannot assert a NIED or a negligence claim against Ms. DeLoach.

---

[35] Elsey-Jones Depo at 12.
[36] Elsey-Jones Depo at 13.
[37] Elsey-Jones Depo at 63.
[38] Deposition of Corporal Joseph Aube on January 8, 2018 (the "Corporal Depo") at 35.
[39] *Id.*

## C.    MEDICAL EXPERTS – PHYSICAL MANIFESTATIONS

"The law of Delaware is well settled that a claim of negligent infliction of emotional distress or mental anguish may not be maintained in the absence of evidence of a present physical injury."[40] Claims of physical injury "cannot be transitory, non-recurring phenomena to be . . . legally recognized [as] caused by emotional distress."[41] Allegations of "sleeplessness and nausea" have been found sufficient to support emotional distress for negligent infliction for emotional distress on a motion to dismiss standard.[42]

At this point in the civil action, Ms. Elsey-Jones presented sufficient evidence of physical injury. Ms. Elsey-Jones testified that she experienced inability to sleep, inability to drive I-95, heaviness in her legs, hyper vigilant, and problems eating, walking, sleeping, loss of concentration, and nervousness. These problems began the day after the incident and continued at least for several weeks. Ms. Elsey-Jones' counselors at Turnaround, Inc. stated that Ms. Elsey-Jones' physical injuries are physical manifestations of the grief she endured as a result of the incident.

Ms. Gullion and Ms. DeLoach argue that expert testimony is required to establish proximate cause between the claims injury and the mental effect of the negligence.[43] For physical injuries as a part of damages of a negligence claim, an expert is not required if a layperson would be able to form an intelligent judgment without the aid of a medical expert.[44] Mental anguish damages relating to physical injuries from negligence also may not require an expert. When the mental anguish directly flow as a natural consequence of the wrongful act and

---

[40] *McKnight for McKnight v. Voshell*, 513 A.2d 1319 (Del. 1986) (citing *Mergenthaler v. Asbestos Corp. of America*, 480 A.2d 647, 651 (Del. 1984)).

[41] *See Rhinehardt*, 2006 WL 2220972, at *5.

[42] *Drainer v. O'Donnell*, 1995 WL 338700, at *3 (Del. Super. May 30, 1995).

[43] *See Collins v. African Methodist Episocopal Zion Church*, 2006 WL 1579718, at *4-5 (Del. Super. Mar. 31, 2006).

[44] *See id.*

physical injuries, then expert testimony of the physical injuries, if necessary, may be sufficient for the mental anguish damages.[45]

Ms. Elsey-Jones' relies upon two licensed clinical social workers, Danielle Branch and Karen Taylor, to establish that her physical injuries resulted from the emotional distress of the incident. However, a social worker cannot provide expert testimony absent any specialized training in the field.[46] It does not appear that Ms. Branch and Ms. Taylor are qualified as experts in medicine, physiology or psychiatry. However, Ms. Gullion and Ms. DeLoach have had an opportunity to depose Ms. Branch and Ms. Taylor. The parties should provide additional guidance on Ms. Branch and Ms. Taylor and consider a motion in limine as to whether they can provide any opinion testimony.

Regardless, as long as Dr. Rosenthal is qualified to testify about Ms. Elsey-Jones's physical injuries from the car accident, then no further expert testimony may be required to link the mental anguish to the accident or physical injuries. As clarified at the Hearing, Ms. Elsey-Jones is not arguing that her mental distress damages are part of a NIED claim but, instead, are a component of her "pain and suffering" damages and will be testified to at the trial. The Court may need to draft a limiting instruction for the jury on this point and will address this at the pre-trial conference.

---

[45] *Re Bangs v. Follin*, 2016 WL 6875959, at *2 (Del. Super. Nov. 21, 2016), *as amended* (Nov. 28, 2016) (not requiring expert testimony for mental anguish stemming from injuries from falling through a floor).
[46] *See Vohrer v. Kinnikin*, 2014 WL 1203270, at *6 (Del. Super. Feb. 26, 2014).

## VI.  CONCLUSION

For the reasons set forth herein, the Gullion Motion is **GRANTED** as to any NIED claim and **DENIED** as to the negligence claim, and the DeLoach Motion is **GRANTED** as to any claim asserted by Ms. Elsey-Jones.

Dated: June 5, 2018
Wilmington, Delaware

> /s/ Eric M. Davis
> Eric M. Davis, Judge